**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Account No. XXXX6600 located at Metropolitan Commercial Bank, and<br><br>Account No. XXXX6570 located at Metropolitan Commercial Bank,<br><br>Defendants *In Rem*. | No. CV-22-00612-PHX-DLR<br><br>**ORDER** |

Before the Court is Claimant BigBen1613 LLC's Motion to Suppress or in the Alternative, Request for Franks Hearing (Docs. 81, 87), which is fully briefed (Docs. 92, 97, 98). The Court heard oral argument on February 20, 2024, and took the motion under advisement. Since then, the parties have submitted supplemental authorities. (Docs. 108, 109.) For the reasons set forth herein, Claimant's motion is granted in part.

**I.      Background**

In 2021, a Phoenix-based FBI undercover agent ("UC") pretending to be a money broker with a network of associates throughout the United States agreed with a Mexico-based money broker ("MBMB") to collect cash in certain U.S. cities and to facilitate the payout of the cash in Mexico. UC collected cash from a variety of cities from April 2021 to August 2021, and pursuant to MBMB's instructions, UC picked up, deposited, and wired $1,127,000 ("Tainted Funds") to one of Claimant's Metropolitan Commercial Bank

accounts, "Target Account 1." The funds in Target Account 1 were then comingled with funds in another of Claimant's Metropolitan Commercial Bank accounts, "Target Account 2." The Tainted Funds deposited into Claimant's bank account paid open invoices for the sale of electronics equipment by Claimant to its longtime customer, CDE.

Seven months after UC's last deposit, the Magistrate Judge authorized the seizure of the funds in Target Accounts 1 and 2 pursuant to 18 U.S.C. § 981(b)(2), which provides: "Seizures pursuant to this section shall be made pursuant to a warrant obtained in the same manner provided for a search warrant under the Federal Rules of Criminal Procedure[.]" The Magistrate Judge determined that there was probable cause that the funds in the accounts were subject to forfeiture because they were involved in money laundering in violation of 18 U.S.C. § 1956 and in an unlicensed money transmitting business in violation of 18 U.S.C. § 1960. The seizure warrant authorized the seizure of the "entire balance . . . out of [Target Accounts 1 and 2] . . . held in the name of [Claimant]" (Doc. 81-1 at 2). The funds seized, more than $3 million, represented the Tainted Funds plus all other money in those accounts on the day the warrant was executed.

Claimant seeks suppression of the seized funds, contending that the affidavit in support of the warrant was inadequate, incomplete, and misleading because it left out facts that would have indicated that Claimant was an innocent owner. Claimant contends that had the Magistrate Judge been informed of the evidence of innocent ownership, there would have been no finding of probable cause and the warrant would not have issued.

Claimant also seeks to suppress on a separate ground the additional $2,247,912.96 ("additional $2M") that happened to be in the accounts the day the seizure warrant was executed. The seizure warrant was executed in March 2022. The last deposit made by UC into Claimant's bank account occurred in July 2021. Claimant contends that by the time the Government filed its warrant application for the seizure, the application was "stale" because "the Government knew that any alleged criminal conduct was long ago completed by the time of its application." (Doc. 87 at 20.) Claimant contends that the affidavit intentionally or recklessly falsely indicated that the accounts had been continually used and

that there was reason to believe would be used in the future for laundering money. (*Id.* at 20-21.)

Claimant seeks a *Franks*[1] hearing to show that there were facts that would have shown a lack of probable cause for the issuance of the seizure warrant because Claimant did not know and had no reason to know that "that the funds it received were proceeds from illegal trade-based money laundering" and did not "intentionally mix[] those illicit funds with legitimate funds to disguise their true origin." (Doc. 87 at 10.) Claimant seeks the suppression of all the money seized from its accounts.

**II.   Dicussion**

A civil forfeiture is an *in rem* proceeding against the seized property, which "by resort to a legal fiction, [is] held guilty and condemned as if it were conscious instead of inanimate and insentient." *United States v. Ursery*, 518 U.S. 267, 275 (1996) (quotation and citation omitted). Civil forfeiture actions against seized property are governed by Supplemental Rule G of the Federal Rules of Civil Procedure. Motions to suppress seized property as evidence at trial are governed by Rule G(8)(a), which provides that "[i]f the defendant property was seized, a party with standing to contest the lawfulness of the seizure may move to suppress the use of the property as evidence." However, "[s]uppression does not affect forfeiture of the property based on independently derived evidence." As such, even if the Court suppresses the defendant property as evidence, the forfeiture action still proceeds. *See United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 450 (9th Cir. 1983) (explaining that the mere fact that property was illegally seized does not immunize that property from forfeiture).

Whether the claimant is an innocent owner is not relevant to the initial seizure. "Since it is not a person that is proceeded against, it does not matter if the wrongdoer whose conduct forms the predicate for the forfeiture action was ever charged, convicted, or even acquitted of misconduct." *United States v. $399, 101.96 more or less, in U.S. Currency*, No. SA-11-CV-731-XR, 2013 WL 3994632, at *4 (W.D. Tex. Aug.

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

1, 2013). Section 981 does not restrict the Government from seizing property subject to forfeiture to which someone may later claim ownership and assert a defense under 18 U.S.C. § 983 in a civil forfeiture action. A claim that an entity is an innocent owner does not negate the existence of probable cause to seize money collected as part of a money laundering or illegal money transmitting business offense. *United States v. One 1981 Datsun 280ZX VIN: JN1HZ04S4BX407742*, 644 F. Supp. 1280, 1285 (E.D. Pa. 1986).

When cash deposited in an account in a financial intuition is seized in an *in rem* forfeiture action, the Government is not required to identify the specific property involved in the offense that is the basis for the forfeiture. 18 U.S.C. § 984(a).  And it is not a defense that the property involved has been removed and replaced by identical property. *Id.* The exception to the tracing requirement in § 984(a) also applies to property used to facilitate the offenses, such as funds comingled with criminal proceeds.

**A. Seizure of the $1,127,000 wired to Claimant's bank by UC.**

The Special Agent's affidavit contained sufficient facts for finding probable cause for the issuance of the warrant and the seizure of the Tainted Funds wired from UC's account to Target Account 1. The affidavit filed in support of the warrant contains facts supporting a finding of probable cause that: (1) the wire transfers of approximately $1,127,000 from UC's financial consulting company's account into Claimant's bank account constituted financial transactions; (2) the funds constituted proceeds (as defined in 18 U.S.C. § 1956(c)(9)) of dealing in a controlled substance or listed chemical (as defined in 21 U.S.C. § 802), which is a specified unlawful activity pursuant to 18 U.S.C. § 1956(c)(7)(A); (3) MBMB knew that the transactions were designed to conceal the nature, source, and ownership of the proceeds; and (4) the cash in Target Account 2 was comingled with the funds in Target Account 1, disguising (intentionally or unintentionally) the nature of the drug proceeds.

The facts alleged in the affidavit for the forfeiture of the Tainted Funds were facts alleged against the property itself. No facts or allegations are required showing the involvement of the entity claiming ownership of the seized property. *See United States v.*

*Approximately $299,873.70, Seized From Bank of Am. Acct.*, No. 16-00545-KD-N, 2020 WL 390897, at *2 (S.D. Ala. Jan. 22, 2020) ("The United States was not required to prove that the Claimants had the intent to promote a visa fraud scheme. Rather, the United States was required to prove that someone facilitated the transfer of funds with intent to promote a visa fraud scheme."); *In re 650 Fifth Ave and Related Props.*, 777 F.Supp.2d 529, 555 (S.D.N.Y. 2011) (noting that "owner of criminal proceeds does not need to have committed the offense giving rise to their forfeiture"). Here, the same evidence that proves the criminal money laundering and unlicensed money transmitting charges pursuant to §§ 1956 and 1960 against MBMB also proves that the seized property he used to commit these offenses is subject to forfeiture as property involved in such offenses pursuant to § 981(a)(1)(A).

The affidavit contained facts that established probable cause to find all the elements of money laundering. Including the wiring of tainted money into Claimant's accounts. The money wired by UC to Target Account 1 was subject to seizure pursuant to 18 U.S.C. § 981 because it was property involved in money laundering. Testimony that Claimant was an innocent owner is not relevant to the finding of probable cause to issue the warrant to seize the Tainted Funds. The specific amount of tainted money deposited into the account by UC was set forth in the affidavit, providing a reasonable basis for the Magistrate Judge to authorize the seizure of that same amount as replacement funds, even though the warrant was issued seven months after the last deposit.

**B. Seizure of the additional $2M in Claimant's account.**

The Government contends that the additional $2M was subject to forfeiture on a facilitation theory. (Doc. 92 at 14.) To seize money on that theory, "the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

Although the civil forfeiture statue allows seizure of replacement funds, both tainted and untainted, for up to a year after the removed funds became subject to forfeiture, that does not vitiate the requirement that there must be reasonable grounds provided to the judge

issuing the warrant that the property was involved or traceable to the alleged offenses for a warrant to issue. Here, there is nothing in the affidavit that explains how much money, or even a range, that was in Claimant's accounts at any time money from UC was deposited and commingled to launder the Tainted Funds.

The Government contends that the mere fact that the money was in the same account where tainted funds were deposited seven months ago establishes the substantial connection. The Court disagrees. Simply because some amount of money was found in the same account where tainted funds had been deposited months earlier does not in itself establish the connection. The affidavit does not identify facts that the additional $2M was involved in money laundering or in an unlicensed money transmitting business, or how the funds in the account, when it was seized, were replacement funds. The affidavit explains that when the Tainted Funds were deposited in the account, they were comingled with some unknown amount of untainted money. That alone, however, does not establish the necessary connection if there is no reason to believe that the account had continued to host tainted money. The allegations are against the money itself, not the entity claiming ownership. Likewise, the allegations are not against the account. What's more, Claimant argues that the affiant proffered false testimony and omitted material exculpatory information from the warrant application that would have resulted in the Magistrate Judge not issuing a seizure warrant for any more money than the Tainted Funds. In support of its argument, Claimant contends that there had been no tainted money deposited in either subject account in seven months before the affidavit was prepared and the Government had messages with MBMB that he was no longer going to transact business with UC. (Doc. 81-1 at 69-70.)

Although the civil forfeiture statute allows seizure of replacement funds, the Government has not provided a means for the Court to determine the amount. Probable cause does not exist to seize money from an account as replacement funds simply because there is reason to believe that the account had been used seven months ago as part of a money laundering scheme without a showing that the amount seized is related to the

amount that had been used for laundering money. The Government has not provided authority for its argument that, because a particular account, months ago, contained tainted funds comingled with untainted funds, any amount of money found in the account seven months later is subject to seizure pursuant to § 981.

Claimant has established that the finding of probable cause for the seizure warrant turns on a representation by the affiant about the continuous use of Target Accounts 1 and 2 by MBMB for money laundering. There is sufficient basis to question whether that opinion was based on false or misleading facts and, if so, whether those false or misleading facts were communicated intentionally or recklessly.

**IT IS ORDERED** that Claimant's Motion to Suppress or in the Alternative, Request for Franks Hearing (Docs. 81, 87) is **GRANTED IN PART**. The Court will hold a *Franks* hearing before Judge Douglas L. Rayes in Courtroom 606, 401 W. Washington St., Phoenix, AZ 85003, on **May 21, 2024, at 2:00 p.m. (Arizona time)**. Each side shall be allotted one hour.

Dated this 17th day of April, 2024.

Douglas L. Rayes
United States District Judge